SHAWN N. ANDERSON
United States Attorney
BENJAMIN K. PETERSBURG
Assistant U.S. Attorney
Sirena Plaza, Suite 500
108 Hernan Cortez Avenue
Hagåtña, Guam 96910
PHONE: (671) 472-7332
FAX: (671) 472-7215

Attorneys for the United States of America

FILED
DISTRICT COURT OF GUAM
APR 18 2025
JEANNE G. QUINATA
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF GUAM

4:25-mj-0240

25-00046

| UNITED STATES OF AMERICA, | MAGISTRATE CASE NO. _____ |
|---|---|
| Plaintiff, | **COMPLAINT** |
| | **CONSPIRACY TO DISTRIBUTE FIFTY (50) GRAMS OR MORE OF METHAMPHETAMINE HYDROCHLORIDE** |
| vs. | [21 U.S.C. §§ 846, 841(a)(1) & (b)(1)(A)(viii))] (Count 1) |
| LIANA JOELENE CABRERA, ZERXES JABIDANDO VIVA, ALAN DALE BERNAL aka ALLAN DALE BERNAL, and EDWARD GLEN DEMAPAN, | **ATTEMPTED POSSESSION WITH INTENT TO DISTRIBUTE FIFTY (50) GRAMS OR MORE OF METHAMPHETAMINE HYDROCHLORIDE** [21 U.S.C. §§ 846, 841(a)(1) & (b)(1)(A)(viii) and 18 U.S.C. § 2] (Count 2) |
| Defendants. | |

THE UNDERSIGNED COMPLAINANT CHARGES UPON INFORMATION AND BELIEF THAT:

**COUNT 1: CONSPIRACY TO DISTRIBUTE FIFTY (50) GRAMS OR MORE OF**

**METHAMPHETAMINE HYDROCHLORIDE**

From on or about at least August 7, 2024, the exact date unknown and continuing until at least August 26, 2024, in the District of Guam and elsewhere, the Defendants, LIANA JOELENE

COPY

1

CABRERA, ZERXES JABIDANDO VIVA, ALAN DALE BERNAL aka ALLAN DALE BERNAL, and EDWARD GLEN DEMAPAN, and other persons known and unknown, did knowingly and intentionally combine, conspire and agree to distribute fifty grams (50) or more of methamphetamine hydrochloride, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Sections 846, 841(a)(1) and (b)(1)(A)(viii).

**COUNT 2: ATTEMPTED POSSESSION WITH INTENT TO DISTRIBUTE FIFTY (50) GRAMS OR MORE OF METHAMPHETAMINE HYDROCHLORIDE**

From on or about at least August 7, 2024, the exact date unknown and continuing until at least August 26, 2024, in the District of Guam and elsewhere, the Defendants, LIANA JOELENE CABRERA, ZERXES JABIDANDO VIVA, ALAN DALE BERNAL aka ALLAN DALE BERNAL, and EDWARD GLEN DEMAPAN, knowingly and intentionally attempted to possess with intent to distribute fifty (50) grams or more of methamphetamine hydrochloride, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Sections 846, 841(a)(1) and (b)(1)(A)(viii) and Title 18, United States Code, Section 2.

**COMPLAINANT FURTHER STATES:**

I, Special Agent Samuel Lawver, being duly sworn under oath, depose and say the following:

I.  **INTRODUCTION AND AGENT BACKGROUND**

1. This affidavit is made in support of a request for an arrest warrant and criminal complaint charging **Liana Joelene CABRERA** (hereinafter referred to as "CABRERA"), **Zerxes Jabidando VIVA** (hereinafter referred to as "VIVA"), **Alan Dale Bernal aka Allan Dale BERNAL** (hereinafter referred to as "Bernal"), and **Edward Glen DEMAPAN** (hereinafter referred to as "DEMAPAN") with knowingly and intentionally conspiring to distribute and

attempted possession with intent to distribute methamphetamine hydrochloride, in violation of Title 21, United States Code, Sections 846 and 841(a)(1) and (b)(1)(A)(viii).

2. Because this affidavit is being submitted for the limited purpose of obtaining a criminal complaint and securing arrest warrants, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause for the requested complaint and arrest warrant. Where statements of others are set forth in this affidavit, they are set forth in substance and in part. The information contained in this affidavit is based upon my personal observations and training, as well as information related to me by other law enforcement officers and/or agents.

## A. Experience and Background

3. I am a Special Agent with the United States Department of Justice, Drug Enforcement Administration ("DEA"). I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I have been employed by the DEA since August, 2019. As part of my training, I received eighteen (18) weeks of training in the area of narcotics investigations at the DEA Justice Training Center in Quantico, Virginia. Between February, 2020 and February 2023, I was assigned to the DEA's Stockton Resident Office in Stockton, California. Since February 2023, I have been assigned to the DEA's Guam Resident Office ("GRO"). During the course of my employment with the DEA, I have had the opportunity to converse with law enforcement professionals as to drug trafficker methods, regarding the manufacture, importation, transportation, distribution and sales of controlled substances, as well as their methods used to conceal, transport, and launder cash and/or other types of drug proceeds. I have received training in various means by which persons involved in these types of criminal activities use telephones, computers, buildings, storage units, residences,

vehicles, businesses, and other structures to conceal their activities from law enforcement. I have become familiar with the types and amounts of profits made by drug dealers, the methods, language, and terms that are used. I have received both informal and formal training in the area of drug/narcotics investigations. I am also familiar with the installation of GPS tracking devices on vehicles and the surveillance of these vehicles. Additionally, I have also testified in Federal Grand Jury proceedings.

4. I have been the case agent and assisted other agents and officers in investigations on cases involving violations of Title 21, United States Code, Section 841(a)(1), the manufacture of, distribution of and possession with intent to distribute controlled substances; Title 21, United States Code, Section 843(b), and Title 21, United States Code, Section 846, conspiracy to commit the foregoing. Specifically, those investigations have focused on the manufacture and distribution of marijuana, crystal methamphetamine, fentanyl, heroin, and cocaine. I am familiar with, and have participated in, conventional investigative methods, including, but not limited to, electronic surveillance, visual surveillance, controlled deliveries of contraband, questioning of witnesses, search warrants, confidential sources, pen registers, and trap and trace. Through my training and experience, I have become acquainted with the modus operandi as it pertains to the illegitimate possession and distribution of controlled substances. These methods include the use of telephones, social media, secure messaging applications. cellular telephones, wireless communication technology, counter surveillance, elaborately planned smuggling schemes tied to legitimate businesses, false or fictitious identities, and the use of coded or vague communications in an attempt to thwart law enforcement. I have also interviewed confidential sources and have discussed with them the lifestyle, appearances, and habits and methods of drug dealers and users.

5. Prior to my employment with the DEA, I served as a Peace Officer for the Canton Police Department in Canton, Ohio (April 2015 – August 2019). I participated in investigations,

search warrants, arrests, and interviews pertaining to various criminal matters. During my service with the Canton Police Department, I arrested subjects for simple possession as well as possession for sales of controlled substances. I have testified in Stark County, Ohio Courts regarding criminal offenses including assaults with a deadly weapon, possession of controlled substances, burglaries, and related cases.

6. All the facts and information set forth in this affidavit were obtained through official law enforcement communications.

## II. PROBABLE CAUSE

### A. Background of Investigation

7. This affidavit is made in support of an ongoing investigation involving a drug-trafficking organization ("DTO") involved in the distribution of controlled substances, specifically methamphetamine throughout Guam with ties to various locations throughout the continental United States, in violation of Title 21, United States Code, Sections 846 and 841.

8. The DEA-GRO is investigating a Drug Trafficking Organization (DTO) that is responsible for the shipment of methamphetamine and suspected drug proceeds between Guam and the Houston, Texas area. Analysis of information received throughout the investigation revealed CABRERA, DEMAPAN, BERNAL, and VIVA to be active members within the DTO and to have knowingly furthered the illicit activities of the DTO.

9. Through further investigation, it was revealed that a DEA Confidential Source ("CS") had information pertaining to the DTO and was in direct contact with DEMAPAN. It should also be known that DEMAPAN is currently incarcerated inside the Guam Department of Corrections ("DOC") for murder related charges. Furthermore, the CS indicated that DEMAPAN has multiple cell phones within Guam DOC that he utilizes to coordinate and conduct DTO activities.

10. **Confidential Source:** The CS is working under the direction and control of the DEA.

To my knowledge, the CS has never provided false information, and multiple statements made by the CS have been corroborated. The CS has successfully purchased controlled substances in the effort to further DEA investigations. The CS does have a criminal record and is cooperating with investigators for leniency regarding pending federal charges. Nonetheless, I believe the CS to be credible.

### B. Current Investigation

11. In coordination with the United States Postal Inspection Service ("USPIS") multiple Houston, Texas and Guam area addresses were identified that were suspected of being utilized in the furtherance of the DTO. Additionally, USPIS investigators identified a Stamps.com account that was being utilized to ship parcels to the addresses. The Stamps.com account utilized held an account name of Rachael NAUTA, meter # 2737487, billing name of Liana CABRERA, billing address of 21598 Kingwood Dr, Kingwood, TX, and a mailing address of 11414 Clearfield Dr, Houston, TX. Commercial databases revealed that CABRERA and NAUTA are both associated to 21598 Kings Bend Dr, Humble Texas and that CABRERA to be associated to 11414 Clearfield Dr, Houston, TX. Furthermore, it is believed that 21598 Kingwood Dr, Kingwood, TX is not a good address and that it was utilized in place of 21598 Kings Bend Dr, Humble Texas.

12. According to the Stamps.com public website the company simplifies mailing and shipping for businesses and organizations and offers access to services for printing shipping labels at discounted rates for multiple mailing services including the United States Postal Service ("USPS").

13. A parcel was identified being sent from Guam to one of the identified addresses in Houston, Texas, 11414 Clearfield Dr., Houston, Texas. The parcel was shipped utilizing the Stamps.com account (meter # 2737487) to generate the mailing label and was sent on August 7, 2024. The listed sender on the parcel was See VIVAS with a sender address of 116 Luisa St.,

6

Tamuning, Guam. The investigation later revealed that 116 Luisa St., Tamuning, Guam is Zerxes VIVA's residential address. Guam USPIS investigators coordinated with USPIS counterparts in Houston, Texas, and were able to locate the parcel. A subsequent search warrant (4:24-MC-6591) was obtained in the Southern District of Texas signed by U.S. Magistrate Judge Richard Bennett. The search of the parcel revealed the package to contain $80,160 of United States Currency ("USC").

14. USPIS, utilizing internal databases, established that there were multiple inquiries on the tracking of the above referenced package that contained $80,160 USC and were able to identify I.P. addresses associated to these inquiries. DEA-GRO then subpoenaed T-Mobile who was found to be the host of the I.P. addresses. T-Mobile produced the associated account information and it was found that the T-Mobile account is billed to Liana CABRERA at 21598 Kings Bend Dr, Kingwood, TX. T-Mobile also identified the phone number and IMEI of the cellular device utilized. The phone number was identified as 346-855-1904 and was subsequently found to be subscribed in CABRERA's name.

15. USPIS then identified another parcel that was sent from the Houston, Texas, area to Seed VIVAS at 116 Luisa St., Tamuning, Guam ("Target Residence" and VIVA's residential address). Again, this parcel was shipped utilizing the Stamps.com account (meter # 2737487) to generate the mailing label and was shipped on August 10, 2024. USPIS investigators successfully located the parcel in Guam prior to delivery. Subsequently, USPIS obtained a Search Warrant (MJ-24-00098) in the District of Guam signed by U.S. Magistrate Judge Michael Bordallo. The search of the parcel revealed the package to contain approximately 3,021 grams of methamphetamine.

16. The suspected methamphetamine was later tested at a USPIS forensic laboratory and determined to be 2,855.9 grams of 99% pure methamphetamine hydrochloride.

17. On August 22, 2024, Guam USPIS, DEA, and other federal and local law

enforcement partners conducted a controlled delivery operation of the seized drug parcel to the Target Residence. Commercial databases revealed that the Target Residence is associated to Zerxes VIVA. Additionally, VIVA lists the Target Residence as his residence with the Guam Probation Office as he was at the time on pretrial release on a local Guam Court case. Prior to delivering the package USPIS obtained a tracking warrant (MJ-24-00102), as well as an anticipatory warrant (MJ-24-00103) for the Target Residence. The package was also outfitted with an electronic monitoring device.

18. After delivering the package to the Target Residence investigators observed a 2003 Toyota Corolla, bearing Guam License Plate SJ 4630 ("Target Vehicle 1"), depart the Target Residence along with the tracking device. Investigators continued to conduct surveillance and followed Target Vehicle 1 to "Sugo Naya" game room located in Dededo, Guam, where Target Vehicle 1 parked. Target Vehicle 1 then departed the area of the game room, however, the electronic monitoring device located inside of the parcel remained in place. Moments later the parcel alerted, showing movement. Investigators then observed a black GMC Canyon, bearing Guam License Plate, CP 4688, depart the area of the game room and head towards the 76 Gas Station in Dededo.

19. Shortly after, the electronic devices alerted team members that the parcel had been breached. Team members deployed from their vehicles and contacted the operator of the vehicle – later identified to be A.C. – and its passenger – later identified as BERNAL. A.C. and BERNAL were detained and brought to USPIS to be interviewed and processed. The parcel was observed in the vehicle with a finger sized hole punctured in it. The parcel was subsequently secured and transported to USPIS.

20. During a post Miranda interview, BERNAL provided consent to search his cell phone and admitted to knowing that there was supposed to be methamphetamine inside the parcel and

8

that he punctured the hole in the package himself. BERNAL also identified Zerxes VIVA as the person that he received the parcel from and that he retrieved the parcel from the trunk of VIVA's vehicle. Investigators later obtained nearby security footage of the game room parking lot verifying that BERNAL did retrieve the parcel from Target Vehicle 1. While analyzing the communications on BERNAL's cell phone investigators observed a call shortly before BERNAL picked up the parcel from a contact saved in his cell phone as "Z" utilizing WhatsApp. The contact card identified the number associated to "Z" as 671-482-4604. Subscriber information for that number revealed the subscriber to be Zerxes VIVA with a listed service address of 116 N. Luisa St, Tamuning, GU.

21. Furthermore, investigators analyzed multiple phone calls made through Guam DOC Pay-Tel phone system that identified the VIVA's phone number as the outside number being utilized. Investigators believe the phone calls were made by VIVA and that VIVA was speaking to an inmate named Richard ESPEDION (hereinafter referred to as "RICHARD"). During the phone calls, RICHARD was often referred to as the "Old Man". Many of the phone calls were conducted in the Ilonggo language and the identified pertinent conversations were then translated. The conversations revealed that VIVA was the individual that dropped the parcel off to BERNAL, that he was worried that other co-conspirators blamed him for BERNAL's arrest, and that he is actively engaging in the distribution of controlled substances with multiple co-conspirators.

22. The following pertinent excerpt is from the prior mentioned DOC Pay-Tel phone recordings:

Call 8/23/24 @ 5:02PM:

| RICHARD: Shit I left it upstairs (UNINTELLIGIBLE) |
| VIVA: Hello |
| RICHARD: Hello ... |
| VIVA: Hello borj |
| RICHARD: How are you? |

9

| | |
|---|---|
| 1 | VIVA: Not good borj |
| 2 | RICHARD: Why, what happened? |
| | VIVA: … (UNINTELLIGIBLE) … they are accusing that I set up "AL" |
| 3 | RICHARD: Ha? what? … what borj? |
| 4 | VIVA: They are saying … hello … hello … hello … can you hear me? (UNINTELLIGIBLE) … they think I set him up |
| 5 | RICHARD: Who? |
| | VIVA: "AL" |
| 6 | RICHARD: They think that what? You? |
| | VIVA: Yes… because when we exchange the one yesterday… he got he got pulled over |
| 7 | RICHARD: So… what? |
| 8 | VIVA: … (UNINTELLIGIBLE) borj I didn't talk to no body… but… but… I didn't (UNINTELLIGIBLE) … right now I'm trying to work on the video from my house so I can show him … |
| 9 | RICHARD: Uhmm… so where, so where is he |
| 10 | VIVA: I don't know borj… he's saying he's home now …he's home now but, "SHORTY" is thinking I'm talking to whoever to the feds… or I don't know man |
| 11 | RICHARD: Uhmm… so say… say… tell him (UNINTELLIGIBLE) know anything you didn't… you know |
| 12 | VIVA: I understand but they …they seem like… like (UNINTELLIGIBLE) I don't know what a coincidence when we did the exchange (UNINTELLIGIBLE) he got pulled over |
| 13 | RICHARD: No…that's… as long as you didn't make any… you stand your you know… you know what I'm saying? |
| 14 | VIVA: I am trying to stand it… that's why I don't like that (UNINTELLIGIBLE) …kind of a person because I'm not like that borj I'd rather just go in and just keep my mouth you know I just shut up then go in and I don't (UNINTELLIGIBLE) |
| 15 | |
| 16 | RICHARD: Uhmm |
| | VIVA: I don't (UINTELLIGIBLE) … talking to other people you know but about what we do… I don't…nothing is gon'na come out good for me |
| 17 | RICHARD: Uhmm |
| 18 | VIVA: I know that already |
| | RICHARD: Uhmm, ok (UNINTELLIGIBLE) … haven't talk to "SHORTY"? |
| 19 | VIVA: Earlier, in the morning, after my work he called me, he said, talk to me chelu talk to me what's going on (UNINTELLIGIBLE) … shit I … I don't know, I answered, man, he's trying to make it sound like ah what happened yesterday because that guy got picked up, last night you wouldn't believe that he got picked up (UINTELLIGIBLE) I was waiting, I don't know I don't really know what (UNINTELLIBLE) until somebody really told me. He called me yesterday, "when was the last time you heard from him?", I go shit since I last met him met up with him, so ok man he wasn't answering my calls, I couldn't get a hold of him. "Can you pass by his house?" I said sure, I passed by his house but no one was home, so I don't know, I didn't know (UNINTELLIGBLE), I didn't even go home, I just (UNINTELLIGIBLE) … me too, I don't know |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | RICHARD: So, where are you now? |

| |
|---|
| VIVA: I'm home, I went to work this morning, I came home |
| RICHARD: Uhmm |
| VIVA: I'm just trying to work on the videos, trying to get copy the video from my house to show that mail man did deliver that and there was nothing suspicious when I went we met, |
| RICHARD: Uhmm, hmm ok |
| VIVA: ... I put it in the trunk of the car, I went (UNINTELLIGIBLE), he was the one who told me where we meet, so we met, I just popped the trunk that's it, I didn't go down, he got it from the trunk. |

23. Based upon my training and experience and knowledge of this investigation, I believe that VIVA was referring to BERNAL and the controlled delivery operation when he stated, "they are accusing that I set up AL". I also believe that VIVA was referring to DEMAPAN when he was talking about "SHORTY", as SHORTY is a known moniker for DEMAPAN and that DEMAPAN had called VIVA to find out what happened with the drug parcel and BERNAL's arrest. Additionally, it should be noted that VIVA also described the same chain of events as BERNAL when BERNAL retrieved the parcel from the trunk of VIVA's vehicle.

24. Investigators later conducted a consensual approach of VIVA on September 19, 2024. Prior to making contact, VIVA was observed operating a Toyota Tacoma, bearing Guam license Plate TO 4099, registered to Zerxes VIVA at the Target Residence, and driving to the Target Residence. Investigators continued to conduct surveillance and after a short time observed VIVA depart the Target Residence operating the same Toyota Tacoma (TO 4099). VIVA did multiple evasive turns inside his neighborhood before taking off at a high rate of speed. Investigators did not continue surveillance but later located him in a nearby parking lot. Investigators then approached VIVA identifying themselves as law enforcement. VIVA agreed to speak with them and stated that he (VIVA) really didn't know a lot of what is going on. VIVA also stated that he was getting threats from "GAMAY"/ "SHORTY". Additionally, investigators inquired about the "Old Man" in jail that he speaks with. VIVA responded about the old man regarding him as "Richard". During the interview, VIVA provided his telephone number to be 671-482-4604.

25. Further investigation led to the identification of additional shipping accounts related to CABRERA including another Stamps.com account with meter number 2489692 and a Pitney Bowes account with account number 2000447540. According to the Pitney Bowes website, the company empowers businesses to streamline their shipping, mailing, and ecommerce operations. Users can print shipping labels at discounted rates. The Pitney Bowes account was found to be responsible for a shipment of a parcel seized on October 21, 2024 that contained approximately four pounds of suspected methamphetamine. This parcel was sent to Guam with a listed sender of Angelina S. Sanchez located at 22515 Ramsey Rd, Crosby, Texas. Investigators also obtained a search warrant for the iCloud account associated to CABRERA and phone number (346) 855-1904. Apple iCloud is a cloud-based remote storage service that allows Apple iPhone users to back up their iPhone data and data associated with their iCloud account, including e-mail. According to apple.com, iCloud is the service from Apple that securely stores your photos, files, notes, passwords, and other data in the cloud and keeps it up to date across all your devices, automatically.

26. Review of the prior identified information revealed that they were all connected. For example, the Pitney Bowes account contained two phone numbers associated to the account, 559-640-7418 and 405-998-3677. Commercial databases revealed 559-640-7418 is associated to Liana CABRERA at 21598 Kingsbend Drive, Kingwood, Texas and 11414 Clearfield Drive, Houston, Texas. Phone number 405-988-3677 was found to be subscribed to Jesse GOMEZ via a subpoena to T-Mobile. Commercial databases also revealed the number to be associated to Angie SANTOS (Pitney Bowes account name is Angilene SANTOS) at 21598 Kingsbend Drive, Kingwood, Texas and 11414 Clearfield Drive, Houston, Texas. Additionally, 405-988-3677 was found to be listed in the transaction history of CABRERA's iCloud account associated to the email account "black_dymond@icloud.com", first name "Blkdymond", last name "CABRERA", and an address

of "21598 Kingsbend Dr, Kingwood, Texas". It should be known that "Blkdymond" is a known moniker utilized by CABRERA and that review of the iCloud data demonstrated that CABRERA and GOMEZ were at one time in an intimate relationship and potentially have a child together.

27. Additionally, the primary payment method of the Pitney Bowes account was a Visa card ending in 8790 with an expiration date of 04/2028. Review of CABRERA's iCloud account data associated to the email account "black_dymond@icloud.com" found that a visa card ending in 8790 with an expiration date of 12/2023, 01/1990, and 04/2028 was used multiple times for payment transactions.

28. Review of the Stamps.com accounts revealed that account number 2489692 also listed phone number 405-998-3677 and had the 21598 Kingsbend Drive, Humble, Texas, address listed. The listed account name and billing name was Liana CABRERA. The payment method for Stamps.com account 2489692 was a Credit Card bearing card number ************2546 with an expiration date of 11/2028. Review of CABRERA's iCloud account data associated to the email account "black_dymond@icloud.com" found that a visa card ending in 2546 with an expiration date of 11/2028 was used multiple times for payment transactions.

29. Furthermore, as previously identified Stamps.com account 2737487 had an account name of Racheal NAUTA, billing name of Liana CABRERA, billing address of 21598 Kingswood Drive, Kingwood, Texas, and a physical address of 11414 Clearfield Drive, Houston, Texas. The payment method for Stamps.com account 2737487 was a Credit Card bearing card number ************2546 with an expiration date of 11/2028 (Same card as Stamps.com account 2489692).

30. Information obtained from Sutton Bank, which was identified as the banking institution associated to Credit Card number ************2546, revealed the following regarding the account:

- Account Name: Liana Joelene CABRERA
- DOB: 1982-**-**
- SSN: ***-**-4516
- Address: 21598 Kings Bend Drive, Kingwood, TX 77339
- Phone: N/A
- Email: cabrera_liana671@icloud.com
- Card: ************ 4250 (Active) / EXP: 10-29 / Recipient Address: Liana CABRERA 11414 Clearfield Dr, Houston, TX 77044
- Card: ************ 2546 (Active) / EXP: 11-28 / Recipient Address: Liana CABRERA 21598 Kingsbend Dr, Kingwood TX 77399

31. Further analysis of CABRERA's iCloud account revealed screenshots of multiple postal tracking numbers associated to seized USPS parcels that contained methamphetamine. These tracking numbers included tracking number, 9405511206204021920898, which is the associated tracking number to the controlled delivery parcel that investigators delivered during the operation on August 22, 2024. As seen in the photos below, the tracking number of the controlled delivery parcel is seen as the user was sharing their screen during a video call with a third party, believed to be DEMAPAN. The other photo clearly shows CABRERA in upper right corner and DEMAPAN located in what appears to be the same room as the other photo. It is believed that the room is DEMAPAN's jail cell at Guam DOC.

//
//
//
//
//




32. Additional analysis of CABRERA's iCloud account revealed communications between her and the phone number 671-788-6507. Based on the investigation and as detailed below, this number is associated to DEMAPAN. During the conversation, phone number 671-788-6507 texted CABRERA on August 22, 2024, stating "They just pick up Al", which was the same day BERNAL was taken into custody during the controlled delivery operation. Based on the investigation, I believe this shows that DEMAPAN was part of the conspiracy involving the August 2024 drug parcel, was receiving information from individuals on Guam as the conspiracy proceeded, and was relaying this information to CABRERA in Texas.

33. The CS coordinated multiple controlled purchases of controlled substances with DEMAPAN via 671-788-6507 and 671-788-8467 between November 2024 and January 2025. The CS had identified DEMAPAN's phone numbers for investigators as early as August 2024.

Communications between the CS and DEMAPAN were recorded during these controlled purchase operations either by video or audio recordings. The recordings with the CS revealed that the voice appeared to be of the same person during all recordings. The video recordings of DEMAPAN showed what appeared to be the same jail cell as the above referenced photos from CABRERA's iCloud and DEMAPAN having distinctive tattoos including a spider-like tattoo on the right front shoulder area. Additionally, photos of DEMAPAN contained within the iCloud data showed DEMAPAN having the same tattoo. Furthermore, phone numbers 671-788-6507 and 671-788-8467 were found stored in CABRERA's iCloud data. The phone number 671-788-8467 was stored as "Chelu 2" and 671-788-6507 was stored as "My Kiddys". However, the conversation with 671-788-6507 appeared to be a conversation between romantic partners and that the user of 671-788-6507 was in prison. Based upon my knowledge of this investigation, I know DEMAPAN to utilize the moniker "Chelu" and "Shorty", that CABRERA and DEMAPAN were in a relationship during this time, and that DEMAPAN was incarcerated at Guam DOC.

34. Additional review of DOC Pay-Tel phone recordings of VIVA revealed the following pertinent conversations:

Call 8/26/24 @ 5:12 PM

| |
|---|
| RICHARD: Ok, but how are you hows everything |
| VIVA: Not good because I guess stories came again still or something like that |
| RICHARD: Ha? |
| VIVA: I don't know, I don't know stories are coming out I guess |
| RICHARD: Just … borj just ah just ah hold your ground borj you know |
| VIVA: I've been (UNINTELLIGIBLE) … I got nothing else to do but that |
| RICHARD: Yeah exactly that's all you need to do, because you can't do anything because you (UNINTELLIGIBLE) … that's not ah how you say there's nothing else you can do to defend yourself because you didn't do anything wrong you didn't do anything wrong you know what I'm saying? |
| VIVA: (UNINTELLIGIBLE) … fuckin didn't dude but its all like like it's all pointing out to me and what the heck I didn't even do shit |
| RICHARD: Uhm so what did SHORTY say |
| VIVA: I don't know I haven't heard from him yet ah I think he's thinking it's me dude I |

| | |
|---|---|
| 1 | don't know man but when he talked to me last he sound like he's mad so I don't want to say anything else |
| 2 | RICHARD: Yeah … |
| 3 | VIVA: I don't know I (UNINTELLIGIBLE) borj I, I just wish you were there to talk to him or something like that cause fuck (UNINTELLIGIBLE) |
| 4 | RICHARD: He knows … he knows that don't … he knows you can't make that you know, he knows |
| 5 | VIVA: (UNINTELLIGIBLE) … I don't know who's to believe you know it's my word against whoever words out there but I don't know borj it's … |
| 6-7 | RICHARD: the truth will come out borj … ok it's gon'na … it's gon'na … as long as you didn't … you know … just stand your ground that's it … and me too I'm gon'na do exactly the same thing you know … that … I didn't make a mistake … I didn't do anything bad … so nothing … I have nothing to worry about so … |
| 8-9 | VIVA: If anything … man I rather go in and do the time and not have to worry about shit … than to fucking be a talker and fucking stay out here and keep looking over my shoulder fuck that! |
| 10 | RICHARD: Yeah … |
| | VIVA: Why do you think I'd rather just …you know? |
| 11 | RICHARD: Yeah … but … no … you don't need to go that borj because you didn't, you didn't do anything bad |
| 12-13 | VIVA: Yeah (UNINTELLIGIBLE) … I just hope (UNINTELLIGIBLE) … I don't know …everybody …every… I just hope they … they see it that way too because I didn't do shit dude … I was just fucking following directions trying to … |

35. Based upon my training and experience and knowledge of this investigation, I believe that VIVA was talking to RICHARD regarding the controlled delivery package and how there are "stories" that he (VIVA) was the reason for the arrest of BERNAL. I further believe that VIVA was again referring to DEMAPAN when he spoke about "SHORTY". Additionally, VIVA stated that he was following directions which indicated that he was being instructed by others within the DTO regarding the delivery of the controlled delivery parcel. Furthermore, both VIVA and RICHARD indicated that VIVA needed to talk with "SHORTY" about the incident. Based upon my training and experience, I believe that VIVA needed to speak with DEMAPAN because DEMAPAN was in charge of the delivery of the parcel and that DEMAPAN conspired with other DTO co-conspirators to have the methamphetamine shipped from Texas to Guam in furtherance of the DTO.

36. For example, the below transcript between CABEREA's iCloud account and phone number 671-788-6507 demonstrates that the user of the iCloud account (CABRERA) was responsible for sending methamphetamine to DEMAPAN. Furthermore, the messages indicate that CABRERA knew the methamphetamine was inside the prison and that she was taking a risk with being arrested for sending the methamphetamine:

> Black_dymond82@icloud.com: 8/4/2024 2:15 PM
> Listen and watch all u want cuz ima shut it down soon … everything im saying is because u gave me a reason too

> 671-788-6507: 8/4/2024 2:23 PM
> You do what you want to do I delete the app already

> Black_dymond82@icloud.com: 8/4/2024 2:49 PM
> Let me remind u how it went down ..
> u we're saying ur GONA smoke it all I'm telling I it's good enuff to sell and let the people try it. Dnt just smoke it all (becuz u have so much to small all )
> I'm not risking my ass for u all to throw shit in the yard and to smoke it all .. HAVE RESPECT FOR THE PERSON THATS RISKING THEIR ASS FOR YALLS TO get it ..
> The u being wise to me I asked u ur being wise u said YAH CUZ WE GOT DIS .. okay then why have me on the fone and if u got it then have it and fuk u for thinking to tlk to me the way u did and then to tell me u guys got dis fuk u to .. UR GONA TELL ME U LOVE ME AN IN DIS TOGETHER FOR U TELL ME U GUYS GOT DIS THEN HAVE IT ITS ALL URS

> Black_dymond82@icloud.com: 8/4/2024 2:51 pm
> BUT FUK U IF U THINK IMA ALLOW U TO TREAT ME LIKE UR WOMAN BEHIND CLOSE DOORS THEN Ur Gona TALK TO ME LIKE IM JUST A BITCH HANGING ON .. have it I dnt care

37. Therefore, based upon my training and experience and knowledge of this investigation, I believe that CABRERA in concert with other co-conspirators including DEMAPAN, BERNAL and VIVA coordinated the shipment of methamphetamine to Guam for further distribution in furtherance of the DTO's illicit activities

## III. REQUEST FOR SEALING

38. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the

targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

## IV. CONCLUSION

39. I believe that based upon the information contained herein, probable cause exists that **CABRERA, DEMAPAN, BERNAL,** and **VIVA** knowingly and intentionally conspired to distribute and attempted to possess with intent to distribute methamphetamine hydrochloride, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1) and (b)(1)(A)(viii) and Title 18, United States Code, Section 2, and I therefore respectfully request that a warrant be issued for their arrest.

FURTHER AFFIANT SAYETH NAUGHT.

SAMUEL LAWVER
Special Agent
Drug Enforcement Administration

SUBSCRIBED AND SWORN TO before me on this 17th day of April, 2025.

FRANCES M. TYDINGCO-GATEWOOD
Chief Judge